Columbus Southern Railway Co. v. Woolfolk & Co.

1. Where commodities such as watermelons are shipped in full carloads by railroad from one city to another, the freight is due, in the absence of an express contract fixing a different time, when the cars reach the usual place of storing such cars in the city of destination, and the consignee is notified of their arrival and of the company's readiness to deliver. This is so although it may be necessary, before actual delivery can be made, to switch them out and place them upon particular tracks of the company designated as "team" tracks. The consignee has no right to postpone the payment of freight until they are placed on those tracks; but he can insist, after paying the freight, that they shall be placed there immediately, or as soon as it can be done with full diligence in the ordinary course of business.
2. If the consignee was in no default in failing to pay the freight, and there was no tender of delivery without payment, he was under no duty to sell the melons whilst they were in the possession of the carrier.                          Judgment reversed.

April 16, 1894.  Argued at the last term.

Action for damages.   Before Judge Bower.   Dougherty superior court.   April term, 1893.

The suit was for failure to deliver to the consignee at Chicago, Illinois, six car-loads of watermelons shipped from Albany, Georgia, on a through bill of lading, July 2, 1891.   The cars were carried in due time, arriving in Chicago on July 7 and 8.   The contest was on the failure to deliver after arrival.   It appeared that when the cars arrived, written notices were sent to the consignee by the railroad agent, stating that the freight was ready

for delivery upon payment of freight charges. The consignee testified: On the day I received the notices and during the next two or three days, I sent to the railroad company to see if the melons were ready to be delivered, and they were not. On July 11, I wrote to the railroad agent a request to have the cars of melons switched down to their yards for delivery, as I wished to dispose of them; that I had sent several persons to the yards to examine the melons, but they returned saying the cars were not on team tracks. To this the agent replied that he would endeavor to get the cars down for me. About July 13, the cars not having been placed where I could get the fruit, I called to see the agent, who stated that, the tracks being very much overloaded, there was no possible showing of getting the cars for me that day, but that he would have them ready the next day. The next day I called with a check made out for the freight charges, which I was ready to sign. The cars were not ready. Between then and the 17th I called every day, and finally had a conversation with the agent, during which both of us became rather angry, I insisting on having my melons, he stating that they would give so many melons to each man. He had not allowed me to get any melons from these six cars. On Monday, July 20, I saw these melons for the first time. The entire six cars were on the track in the yard. Most of them were then spoiled and the others stale, from having stood so long in closed cars. I would not take them, because the proceeds of sale would not have paid the freight charges.

The railroad agent testified: The consignee could have taken his customers to 49th street, where the cars arrived, the same as other parties did who had melons consigned to them, and sold them at that point. He had the same opportunities as numerous other commission men who did so. The market was glutted with

melons at that time. These other persons were there, or had representatives who conducted buyers to the different tracks where their melons were located; some at 49th street yards, some at the lead tracks on 14th street, and some on the team tracks at 12th street. The team tracks are tracks where teams can drive up to the cars and unload from the cars into the wagons. The teams cannot get to the cars until they are placed on these team tracks, but consignees or other persons can. I did not have any of these cars placed on team tracks before July 20. On that day two of the cars were placed there, and the others were left on the lead tracks two blocks below team tracks. I am unable to say whether the consignee was notified that these cars were on team tracks. Parties usually come to see if their cars are there, without notice. The unpleasantness between the consignee and myself was caused by demanding of him that he either pay the freight on these melons or refuse to receive them, which he refused to do; and I refused to place his melons on the team tracks for exhibition purposes, and thus prevent the unloading of other melons and merchandise consigned to parties who had paid freight and were unloading the same from these tracks. I told him that if he sold any of these melons, the cars would be placed on the team tracks for unloading. The yard was crowded, but this did not prevent the placing of the cars on the team tracks if he had paid the freight or sold the melons.

The court charged the jury, in substance, that while the railroad company was not bound to deliver the melons until the freight charges were paid, its duty was to place them where the consignee could receive them before he was bound to pay the freight; that until they were so placed, they had not reached their destination; that if they could not be received or delivered at 49th street, no freight was due on them, if it was to be paid

at destination, until they were placed at a point where the consignee could go and unload the cars. Error was assigned upon the instructions to this effect; and upon the refusal of the court to charge, on request, that if the difference between the amount which the consignee could have realized by the sale of the melons on July 20, and the amount they were worth on arrival, was not more than the freight charges, plaintiffs could recover nothing.

WOOTEN & WOOTEN, for plaintiff in error.
W. T. JONES, contra.